IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ELISA DIAZ                          :
                                    :          CIVIL ACTION
        v.                          :
                                    :          NO. 11-671
CITY OF PHILADELPHIA                :


<u>**MEMORANDUM**</u>

**SURRICK, J.**                                      **JUNE  25 , 2013**

Presently before the Court is Plaintiff Elisa Diaz's Motion for Reconsideration.  (ECF No.

41.)  For the following reasons, the Motion will be denied.

**I.      BACKGROUND**

On January 28, 2011, Plaintiff filed a Complaint in this Court, alleging discrimination, in

violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq*.,

"in regard to . . . terms, conditions and privileges of employment," because of her post-traumatic

stress disorder ("PTSD") (Count I), and retaliation for sexual harassment (Count II).  (Compl. ¶¶

43-44, 49, ECF No. 1.)  Plaintiff has stipulated to the dismissal of Count II.  (Pl.'s Mot. Summ. J.

1, ECF No. 12.)

On March 16, 2012, Defendant filed a motion for summary judgment.  (Def.'s Mot.

Summ. J., ECF No. 11.)  On May 2, 2012, an Order was entered granting Defendant's motion.

(Summ. J. Order, ECF No. 38.)  On May 10, 2012, a Memorandum was filed setting forth in

detail the reasons for the May 2, 2012 Order.  (Summ. J. Op., ECF No. 39.)

On May 16, 2012, Plaintiff filed the instant Motion for Reconsideration.  (Pl.'s Mot., ECF

No. 41.)  Defendant responded on May 18, 2012.  (Def.'s Resp., ECF No. 42.)[1]

## II.     LEGAL STANDARD

A party is entitled to have a court reconsider a judgment in the following circumstances:

"(1) an intervening change in the controlling law; (2) the availability of new evidence that was not

available when the court granted the motion for summary judgment; or (3) the need to correct a

clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann,*

*Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA*

*Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Interdigital Commc'ns, Corp. v.*

*Fed. Ins. Co.*, 403 F. Supp. 2d 391, 393 (E.D. Pa. 2005).  Plaintiff asserts that our ruling on

summary judgment is "palpably incorrect" and "must be reversed to prevent manifest injustice".

(Pl.'s Mot. 2.)

## III.    DISCUSSION

Plaintiff argues that the Court's grant of summary judgment "constitutes a clear error of

fact and law."  (*Id*.)  Plaintiff claims that "[r]econsideration of the Court's May 2, 2012 Order is

warranted because the Court erred in ruling that no genuine issues of material fact existed as to

the necessary elements of Plaintiff's ADA discrimination claim."  (*Id*. at 4.)  Plaintiff identifies

ten specific instances of what she perceives as the Court's misapplication of the standard for

summary judgment.  Plaintiff argues that the "Court's Opinion relies on facts not raised by either

party, makes numerous inferences in favor of Defendant, and omits several crucial facts raised by

Plaintiff."  (*Id*.)  A careful reading of the May 10 Memorandum proves Plaintiff wrong.  We

---

[1] Plaintiff submitted a detailed brief in support of her position.  Defendant's response consists of only three paragraphs devoted to re-articulation of a legal standard and several conclusory sentences.

address each of the Plaintiff's assertions in turn.[2]

First, Plaintiff argues that the Court erred in determining that Plaintiff was not evaluated for mental fitness by Defendant's psychiatrist, Dr. Anthony Arce, M.D., and accuses the Court of "literally quoting Dr. [George] Hayes' recounting of Dr. Arce's hearsay statements that are completely contradicted by the testimony of Plaintiff." (Pl.'s Mot. 8-9.) It is undisputed that no substantive evaluation of Plaintiff occurred. However, this issue of fact is far from material. A fact is "material" only if its resolution could affect the result of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Our conclusion—that Plaintiff was not fit for duty—was not based on statements by Dr. Hayes or Dr. Arce, nor did it require determining the exact reason for Plaintiff's failure to be properly evaluated by Dr. Arce. The material issue of whether Plaintiff was fit for duty was not disputed. Plaintiff's physician and Defendant's physician agreed that Plaintiff was not fit for duty. (*See* Summ. J. Op. 26.)

Plaintiff argues that we resolved a controverted issue of material fact, Plaintiff's cooperation or lack thereof, in favor of Defendant. We disagree. Our Memorandum simply includes the notation of Defendant's physicians' assessment of Plaintiff's lack of cooperation. Plaintiff's Motion picks at many factual inconsistency in the record, and attempts to magnify these inconsistencies to justify proceeding to trial. Not every minor factual question is material. Plaintiff can point to areas where the parties' accounts differ, but she has not demonstrated how any of these differences constitutes a genuine issue of material fact that would require denying summary judgment.

---

[2] We will not revisit our disposition of Defendant's Motion. Rather, we will address only the alleged errors of fact and law specifically raised by Plaintiff.

Second, Plaintiff takes issue with the Court's mention of Plaintiff's appeal to the Civil Service Commission. (Pl.'s Mot. 9-10.) Plaintiff argues that the Court "created arguments on behalf of the City in order to justify granting summary judgment." (*Id*. at 10.)[3] Plaintiff is wrong. In dealing with a motion for summary judgment, we examine the entire record, including motions and exhibits filed subsequent to the motion in question. *See* Wright, Miller & Kane, *supra* § 2723 ("The entire record, including but not limited to the pleadings, briefs, admissions, and answers to interrogatories in the action, is admissible [for purposes of summary judgment]."). In addition, we made no inferences. Plaintiff's appeal was an acknowledged and uncontroverted fact, not the "inference" Plaintiff alleges that we made.[4] This was not an inference in Defendant's favor or an argument created on Defendant's behalf. The Court merely stated an uncontroverted fact. This is certainly not a basis for reconsideration.

Third, Plaintiff claims that the Court drew inferences that Plaintiff suffered from panic attacks in 2008 and 2009 (Pl.'s Mot. 10), that her drowsiness and sleeping problems were more serious than Plaintiff claimed (*id*. at 11), and that her PTSD negatively affected her ability to work

---

[3] This argument is the common theme of Plaintiff's brief. Plaintiff argues, for example, that "the Court went well beyond the facts and arguments presented by the City." (Pl.'s Mot. 9, 11.) The Court is not required to rely only on the parties' briefing in its evaluation of whether or not there exists an outstanding issue of material fact that justifies proceeding to trial. Rather, we examine the record in its totality. *See* 10A Wright, Miller & Kane, <u>Federal Practice and Procedure Civil</u> § 2721 (3d. ed. 1998). ("[T]he court is obliged to take account of the entire setting of the case on a Rule 56 motion [for summary judgment].").

[4] Plaintiff "presume[s] that the Court discovered this evidence in parties' motions in limine." (Pl.'s Mot. 10 n.3.) Plaintiff then proceeds to state that "Defendant's assertions in said motion papers as to the civil service appeal were not factually accurate." (*Id*.)
  Plaintiff's presumption is baseless. We discovered this information in *Plaintiff*'s motion papers, not in Defendant's. (*See* Pl.'s Mot. In Limine 6, ECF No. 15.) Plaintiff accuses us of inferring that such an appeal existed. However, Plaintiff stated explicitly that "Plaintiff filed an appeal under Civil Service Regulation 32.12." (*Id*.)

(*id*.).  Plaintiff's claims are misleading, inasmuch as the so-called "inferences" merely repeat

diagnoses made by Plaintiff's own physicians.  We did not infer that Plaintiff suffered from panic

attacks in 2008.  We drew this information from the notes taken by Dr. Adam Pasternack, D.O.,

Plaintiff's longtime primary care physician.  (*See* Summ. J. Op. 12 n.15 ("In December 2008,

Plaintiff visited Dr. Pasternack, who noted her stress and stomach issues, and that Plaintiff was

having panic attacks.") (citing Pasternack Notes D01484, Pl.'s Resp. Summ. J. Ex. SS, ECF No.

12).)[5]  We did not infer that Plaintiff's drowsiness was considerable.  We simply read the reports

of Plaintiff's own physicians.  Dr. Pasternack wrote that Plaintiff's "medications can cause a

patient to be extremely tired making them significantly less alert."  (Pasternack Letter, Pl.'s Resp.

Summ. J. Ex. S.)  Dr. Brown noted that Plaintiff experienced "[f]atigue or loss of energy nearly

every day."  (Brown Evaluation 162.)  As for Plaintiff's allegation that the Court inappropriately

determined that Plaintiff's PTSD negatively affected her ability to work, Plaintiff's entire lawsuit

is premised on her claim that she suffered from PTSD which required significant medications, and

that this condition required her to be placed on "no duty" or "restricted duty."  It is disingenuous

for Plaintiff to claim that the Court inappropriately resolved material issues of fact when there was

no real dispute as to Plaintiff's condition.

 Fourth, Plaintiff contends that the Court inferred that Plaintiff was moved from the

"CCTV unit" where she had previously been stationed because of her performance, and that such

---

[5] Plaintiff's psychologist, Dr. Alissa Brown, Psy.D., also diagnosed Plaintiff as suffering from "panic attacks" in March of 2009.  (Brown Evaluation 159, Pl.'s Resp. Summ. J. Ex. R.)  In her Complaint, Plaintiff states that the panic attacks became "more frequent" during the period she was in the Closed Circuit Television Unit ("CCTV") and was mistreated by her supervisor, Corporal Tracey Davis.  (Compl. ¶ 31.)  The idea that the Court jumped to an inference as to Plaintiff's panic attacks is entirely unsupported by the record.  The panic attacks were amply supported by Plaintiff herself and her own physicians.

an inference "is belied by the evidence and completely inappropriate at the summary judgment stage." (Pl.'s Mot. 12.) Plaintiff fails to cite the text of our Memorandum in making this allegation. We made no such inference. Our statement that "Plaintiff's time at CCTV was problematic," and our observation that her short tenure at CCTV was marred by a physical altercation with another officer, frequent missed attendance, and a week-long suspension, was not a factual conclusion as to the reason for her reassignment. (Summ. J. Op. 23.) To construe our statement of uncontroverted fact—that Plaintiff's tenure at CCTV was, to say the least, eventful—as an inference or conclusion with regard to her performance is simply wrong. The legal issue before us was whether Defendant's accommodation of Plaintiff's disability was reasonable. The inclusion of reference to her CCTV tenure was provided as background. It was one of the accommodations that Defendant provided. Our Memorandum included the fact that Plaintiff received good performance evaluations while at CCTV. The Court did not assume that the incidents at CCTV were the reason for her reassignment. Plaintiff does not cite to such an inference because no such inference exists.

Fifth, Plaintiff claims there is a genuine issue of material fact "as to whether patrol duties are essential functions of the job." (Pl.'s Mot. 14.) Plaintiff argues that we "incorrectly distinguish[] this case" from *Acevedo v. City of Philadelphia*, 680 F. Supp. 2d 716 (E.D. Pa. 2010). Initially we note that *Acevedo*, a district court opinion, is not controlling. Moreover, the distinction we made—between the physical limitations experienced by the plaintiff in *Acevedo* and the mental disability suffered by Plaintiff here—is a critical one, for reasons that we amply explained in our opinion. (*See* Summ. J. Op. 23-29.)

Most significantly, however, we reiterate that it does not matter whether patrol duties are

essential functions of a Philadelphia police officer's job. We stated that "[a]ny police job, including an 'inside' job, requires substantial maturity and presence of mind.". (*Id*. at 24.) Police work is different. We cited extensive case law to demonstrate that psychological fitness is a prerequisite for many forms of police work. Our interpretation of *Acevedo* is of little consequence, as is the question of whether patrol duties are an essential component of all police work. Plaintiff's psychological disability and the medications that she was taking for it, prevented her from working as an on-duty Philadelphia police officer unless or until she recovered. This conclusion is not ours. It is the conclusion of Plaintiff's physicians.[6]

Sixth, Plaintiff argues that Defendant's offer of unpaid leave was unreasonable, and that this Court erred as a matter of law in determining that it was reasonable. (Pl.'s Mot. 17-18.) Plaintiff is wrong again. We stated that while "this accommodation may not have been Plaintiff's first choice, it was reasonable under the circumstances." (Summ. J. Op. 26-27 & n. 29.)[7] Plaintiff was not entitled to every accommodation she preferred. As we discussed in our Memorandum, Plaintiff received a number of accommodations over the course of her career. Indeed, the CCTV placement itself was an accommodation. Plaintiff received unpaid leave as an accommodation only after exhausting her vacation and sick pay and taking FMLA Leave, and only when it became clear that she was not capable of doing patrol duty. While Plaintiff seems to believe that she has a right to have a jury determine which accommodation would be most appropriate, she does not.

---

[6] Dr. Pasternack wrote on March 12, 2009 that Plaintiff was "severely depressed," that her medications "put her at risk in the line of duty due to side affects (sic) that they may cause," and "that Officer Diaz is unable to function safely as a Philadelphia police officer." (Pasternack Letter.)

[7] Plaintiff herself acknowledged that this accommodation could be reasonable. (*See* Summ. J. Op. 27 n.31.)

Plaintiff has a right to have her disability accommodated within reason. There is no question that Philadelphia Police Department ("PPD") provided reasonable accommodation considering Plaintiff's physical and psychological problems, even if it was not Plaintiff's preferred accommodation.

Seventh, Plaintiff states that there is a genuine issue of material fact as to whether PPD's policy is discriminatory on its face. (Pl.'s Mot. 20.) In its briefing, both in response to Defendant's summary judgment motion and in support of the instant Motion, Plaintiff has offered scant legal basis or factual support for her claim that the PPD's policy is discriminatory. Plaintiff has not suggested what remedy we should order were we to determine that PPD's policy is discriminatory on its face. Plaintiff has provided no reason for us to believe that PPD's policy discriminates unlawfully against individuals with a mental disability. Purely conclusory statements do not suffice to create an issue of material fact.

Eighth, Plaintiff argues that we ignored her "constructive discharge" argument. (Pl.'s Mot. 20.) We did not disregard this argument. The argument simply lacked merit. Plaintiff said, twice, in her brief opposing summary judgment, that "[i]n essence, Plaintiff was constructively discharged once she exhausted her sick leave and vacation time since she was not being paid." (Pl.'s Resp. Summ. J. 31, 39.) This is the extent of Plaintiff's constructive discharge argument. She advanced no legal or evidentiary support for her claim of constructive discharge.[8] Defendant

_____

[8] A constructive discharge claim requires working conditions that are "so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001); *see also Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993) (articulating factors to consider in resolving a constructive discharge claim). Nothing Plaintiff has pointed to in the record rises to the level of severity necessary to satisfy this exacting standard. Plaintiff has claimed that her working conditions were unpleasant and difficult, but has done so in the context of a sexual harassment claim that

offered a valid reason for Plaintiff's discharge. Plaintiff failed to comply with PPD directives and regulations regarding re-employment following her leave of absence. Plaintiff was discharged because she failed to do what she was required to do to become re-employed. Plaintiff has offered no evidence that she was discharged for any other reason.

Ninth, Plaintiff states that the Court incorrectly engages in "pretext" analysis when the correct legal analysis would require us to address claims of direct discrimination. (Pl.'s Mot. 20-21.) Plaintiff argues that we were incorrect for applying the standard articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Pl.'s Mot. 20.) Again, Plaintiff's argument is disingenuous. Plaintiff devoted a substantial portion of her brief opposing summary judgment suggesting that, if we could not find evidence of direct discrimination, we should employ a pretext analysis under *McDonnell Douglas*. (*See* Pl.'s Resp. Summ. J. 35-39.) There was simply no evidence of direct discrimination by Defendant in this case. This is the reason for using the pretext analysis to determine if the nature of Plaintiff's disability was a reason for her placement on unpaid leave and subsequent termination. The use of this standard does not constitute an error of law. Rather, we applied the law as directed by appellate courts and as suggested by Plaintiff herself.

Finally, Plaintiff accuses this Court of making determinations as to Plaintiff's credibility. (Pl.'s Mot. 21.) Plaintiff states that this Court made a credibility determination as to her statement that "she was not ever told that she could renew her 6-month leave of absence." (*Id*.) The issue of whether or not Plaintiff was affirmatively told of her obligation to act after the expiration of her

---

has never been before this Court. Plaintiff's disability discrimination claim can not be used as a vehicle to litigate a 2004 claim for sexual harassment that was not included in this or any other lawsuit and for which the harasser was ultimately exonerated. (*See* Summ. J. Op. 28-29 n.32.)

leave of absence is not material. As we stated in the Memorandum, "Plaintiff was obligated to follow through on the steps necessary to accomplish this goal." (Summ. J. Op. 30.) Whether or not Plaintiff received forms or was affirmatively told of her duties is irrelevant. Plaintiff had certain obligations at the end of her leave of absence. These obligations were clearly spelled out in the PPD directives. Plaintiff was required to become familiar with and to follow those directives. She did not do so. The end result was her leave of absence was not extended and she was terminated for failing to return to duty.

Plaintiff cannot point to any legal or factual errors which justify reconsideration of our grant of summary judgment. We issued a lengthy opinion explaining in detail our conclusion that Defendant was entitled to prevail as a matter of law. Plaintiff cannot demonstrate a clear error of law or fact, or that a "manifest injustice" resulted from our decision. Accordingly, Plaintiff's claim for reconsideration is without merit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be denied.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**